A01A0359. LEWIS v. THE STATE.
(548 SE2d 457)

RUFFIN, Judge.

A jury found Samuel Lee Lewis guilty of two counts of armed robbery. Lewis appeals, challenging the sufficiency of the evidence supporting his convictions. He also argues that he was denied effective assistance of counsel and that the trial court erred in not directing a verdict of acquittal. For reasons discussed below, we affirm.

1. "In reviewing [Lewis'] challenge to the sufficiency of the evi-

---

dence, we do not weigh the evidence or determine witness credibility."[1] Instead, we view the evidence in the light most favorable to support the jury's verdict and determine whether it is sufficient to authorize a rational trier of fact to find Lewis guilty beyond a reasonable doubt of each element of the charged offenses.[2]

Viewed in this manner, the evidence shows that Claire Sanford was robbed at gunpoint while working during the evening hours at a Comfort Inn in Baldwin County. Sanford gave the gunman money, and he left. A video surveillance camera recorded the robbery. Four to five hours later, in the early morning hours, a gunman robbed a Baldwin County Jet Food Store.[3] Michael Norton, the store clerk, handed the gunman a cigar box filled with rolled coins and money from the cash drawer. This robbery also was captured on videotape. Both surveillance videotapes were admitted into evidence at trial.

Shortly after the Jet Food Store robbery, police officers reviewed the two surveillance tapes and determined that the same individual committed both robberies. One officer recognized the gunman from her neighborhood. Although the officer did not know the gunman's name, she recalled that he lived with her neighbor, Azzie Yarbrough. At trial, this officer identified Lewis as the man she observed on the videotape.

Investigating officers staked out Yarbrough's house early that same morning. During the stakeout, they noticed a taxi approaching the Yarbrough property and saw a man duck down in the passenger's seat. Before the individual ducked down, one officer recognized him as the gunman in the two surveillance videotapes. The officers stopped the cab, pulled the passenger out, and arrested him. An officer identified Lewis as the individual arrested outside the Yarbrough home.

Police found two rolls of coins inscribed with Tanya Stevens' name and address in Lewis' pockets. Stevens testified that she wrote her name and address on the rolled coins, which she used to purchase gas at the Jet Food Store. The Jet Food Store's manager recalled that a female made a purchase with rolled coins 18 to 40 hours before the robbery. He also testified that he typically placed any rolled coins he received in a box under the store's checkout counter.

Through their investigation, police discovered that Lewis was driving a car belonging to Yarbrough's son on the night and early morning of the robberies. They located the car at a local car wash, and Lewis confirmed that he ran out of gas in that area. Inside the

---

[1] *Goss v. State*, 247 Ga. App. 520 (544 SE2d 206) (2001).

[2] Id.

[3] The state alleged and presented evidence that Lewis actually used a replica of a pistol (a toy gun) during both robberies.

car, police found a shirt and two hats that, according to witnesses, appeared to be the shirt and hats worn by the gunman during the robberies. Police also discovered a cigar box containing loose change outside the car. Norton identified this box as the cigar box filled with rolled coins that the gunman took from the Jet Food Store.

After police arrested Lewis, they placed him in a lineup. Neither Sanford nor Norton positively identified him during the lineup.[4] At trial, however, both identified Lewis as the robber.[5]

This evidence was sufficient for the jury to find Lewis guilty of both armed robberies beyond a reasonable doubt.[6] The witness testimony and physical evidence, including the identification testimony from the victims and police officers, the surveillance videotapes, the shirt and hats located in the car driven by Lewis, the cigar box discovered near the car, and the rolled coins found on Lewis, provided ample support for the jury's verdict. Lewis' first enumeration of error has no merit.

2. Lewis also argues that he was denied effective assistance of counsel. He claims that trial counsel was deficient in not objecting to or moving to suppress Sanford's and Norton's in-court identification testimony. To prevail on this claim, Lewis must demonstrate both that trial counsel's performance was deficient and that it prejudiced his defense.[7] In other words, he "must overcome the strong presumption that counsel's performance fell within a broad range of reasonable professional conduct and must show that there is a reasonable probability that, absent counsel's deficiency, the result of the trial would have been different."[8]

Two of Lewis' three trial counsel testified at the hearing on his motion for new trial. Defense counsel noted that Sanford and Norton confirmed before trial that they had not been able to identify Lewis during the lineup. Because neither victim had positively identified Lewis, the defense team wanted the jury to hear about the lineup. According to defense counsel, "[t]hat was our best evidence, that [the victims] could not identify [Lewis] before trial." Although the in-court identifications apparently surprised the defense team, counsel did

[4] Norton initially pointed out two individuals in the lineup that resembled the robber. According to Norton, he finally settled on one individual and told a detective about his choice. The detective, however, testified that Norton did not positively identify anyone as the robber.

[5] Norton stated that he was "99 percent sure" and Sanford testified that she was "[r]eal certain" that Lewis was the robber.

[6] OCGA § 16-8-41; *Thorne v. State,* 246 Ga. App. 741 (1) (542 SE2d 157) (2000).

[7] *Allen v. State*, 272 Ga. 513, 516 (6) (530 SE2d 186) (2000).

[8] Id.

not fail to react. Lewis' lead counsel testified:

> [M]y theory was, up until the day of trial including the hearing where [Sanford] had an opportunity to view . . . the defendant, she could not identify him. The first time in trial in front of the jury she could identify him. I didn't know any way — we could have filed a motion to say, "Your honor, she can't testify because she's changing her mind." I'm not aware of any law that would prevent her from taking the stand. So, I thought the most effective way of presenting that, my trial strategy, if you will, was to — if she's going to go ahead and turn, let her do it in front of the jury for the very first time so we can bring up this big contradiction. And that's exactly what we did.

Defense counsel's trial strategy, therefore, involved cross-examining the victims about their changing stories, rather than objecting to or trying to suppress the identification testimony. The record shows that counsel followed through with this plan by thoroughly examining the witnesses about the contradictions. This strategic decision to question Sanford and Norton does not constitute ineffective assistance of counsel. As we have found,

> [t]rial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.[9]

Furthermore, even if trial counsel's performance could be viewed as deficient, Lewis has not shown that "any deficiency so prejudiced his defense that a reasonable possibility exists that the trial's outcome would have been different but for that deficiency."[10] Although the two victims identified Lewis at trial, that testimony gave defense counsel fodder for cross-examination, which counsel used to "show that there was some doubt that [Lewis] was the [robber]."[11] The in-court identification "opened the door to a wealth of opportunities for eroding the state's case, which [Lewis'] counsel seized upon."[12]

---

[9] (Punctuation omitted.) *Leon v. State*, 237 Ga. App. 99, 105 (4) (513 SE2d 227) (1999).

[10] *Caldwell v. State*, 245 Ga. App. 630, 635 (5) (538 SE2d 531) (2000).

[11] *Jamison v. State*, 164 Ga. App. 63, 64 (3) (295 SE2d 203) (1982).

[12] Id.

Accordingly, the trial court did not err in concluding that Lewis received effective assistance of counsel.

3. In his final enumeration of error, Lewis asserts that the trial court erred in failing to grant a directed verdict of acquittal. When reviewing the denial of a directed verdict of acquittal, we employ the same standard used to review the sufficiency of the evidence.[13] We have already found the evidence sufficient to support Lewis' convictions on both counts of armed robbery. It follows that the trial court did not err in denying his motion for directed verdict.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 4, 2001.

*Thomas J. O'Donnell, Jr.,* for appellant.
*Fredric D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney,* for appellee.

---

[13] *Yarbrough v. State,* 241 Ga. App. 777, 780 (4) (527 SE2d 628) (2000).